FILED
2024 Nov-18 PM 04:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FIYYAZ PIRANI, TRUSTEE OF IMPERIUM IRREVOCABLE TRUST, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

MEDICAL PROPERTIES TRUST, INC.; MPT OPERATING PARTNERSHIP, L.P.; EDWARD K. ALDAG, JR.; R. STEVEN HAMNER; and J. KEVIN HANNA,

Defendants.

Case No. 2:23-cv-00486-CLM

CLASS ACTION

Opposed

**LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................1

I. DISMISSAL OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE WAS IMPROPER ........................................................1

A. Plaintiff met the applicable pleading standards and adequately alleged loss causation. ....................................1

B. Dismissal with prejudice was an error or mistake. ...............................3

II. LEAVE TO AMEND SHOULD BE GRANTED .........................................4

A. Rule 15(a)'s liberal standard applies to this Motion. ............................4

B. Plaintiff is not improperly alleging new facts. ......................................5

C. Amendment is not futile on loss causation. ........................................6

D. Defendants mischaracterize and ignore the additional allegations. ......9

CONCLUSION ....................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*,
2023 WL 8258886 (S.D. Fla. Nov. 29, 2023) .......... 5

*Donley v. City of Morrow*,
601 F. App'x 805 (11th Cir. 2015) .......... 6

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) .......... 2, 7

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 4, 5

*Goldman* v. *Brain Tunnelgenix Techs., Corp.*,
2024 WL 2976747 (S.D. Fla. June 13, 2024) .......... 3

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) .......... 9

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023) .......... 2, 4, 7

*McFalls v. NCH Healthcare Sys., Inc.*,
2024 WL 4008112 (M.D. Fla. Aug. 30, 2024) .......... 5

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) .......... 2, 3, 8

*Pub. Employees' Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*,
564 F. Supp. 3d 1272 (N.D. Ga. 2021) .......... 2

*Ravan v. Jackson*,
2023 WL 5843774 (M.D. Ga. Aug. 8, 2023) .......... 5

*Robbins* v. *Koger Props., Inc.*,
116 F.3d 1441 (11th Cir.1997) .......... 2

*Sheffler v. Americold Realty Tr.*,
2023 WL 3918491 (11th Cir. June 9, 2023) .......... 5

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm'ns, Inc.*,
376 F.3d 1065 (11th Cir. 2004) .......... 4

## INTRODUCTION

Plaintiff's Motion (Doc. 51) and proposed Second Amended Complaint (Doc. 51-1, "SAC") demonstrate that this action can clear the pleading hurdles required by the PSLRA, Rule 9(b), and Rule 8. Defendants' Opposition (Doc. 53, "Opp.") creates strawman arguments and does nothing to negate the fact that MPT's stock price dropped due to the market's surprise from the February 23, 2023 corrective disclosure, which revealed for the first time the severity of Prospect's financial weaknesses and that those weaknesses forced MPT to take a massive impairment charge. Defendants concealed and misrepresented financial issues with Prospect and the impact it would have on MPT, as pled in the FAC (Doc. 28) and in even more exacting detail in the SAC. Granting leave to file the SAC would resolve this debate and is the equitable solution.

## ARGUMENT

### I. DISMISSAL OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE WAS IMPROPER

#### A. Plaintiff met the applicable pleading standards and adequately alleged loss causation.

The FAC met the 10-prong list of pleading requirements. Motion at 3-4. Defendants deride a "grab bag of paragraphs" for failing to quantify and justify the required impairment charge. Opp. at 7. But any inspection of those paragraphs reveals that they do both. Plaintiff alleged MPT needed to record the "$283 million impairment charge" "much sooner than Q4 2022," and justified the impairment

charge as "a $171 million write-down of assets related to the Pennsylvania Properties and a $112 million write-off of unbilled rent." FAC ¶¶8, 14, 85, 91, 112, 128, 134.

The FAC also adequately alleged loss causation regardless of Defendants' attempts to move the goalposts. *See* Motion at 5-8. Defendants unpersuasively seek, based on out-of-circuit precedent, to expand Plaintiff's burden beyond Rule 8 (which is what courts in this circuit require). *Compare Pub. Employees' Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1305 (N.D. Ga. 2021) ("Loss causation pleading need only satisfy Rule 8 standards, not the heightened standards of Rule 9 or the PSLRA.") *with* Opp. at 8 n.3. Defendants also quibble with the causation standard but cannot overcome the fact that Plaintiff's allegations clear any proposed hurdle.[1] Plaintiff established the "causal connection" between Defendants' misrepresentations and the February 23, 2023 corrective disclosure that led immediately and inexorably toward a loss of over $1 billion of market value.[2]

Defendants fail to rebut the fact that (1) the market's knowledge of financial

---

[1] The Eleventh Circuit explains, "while 'the plaintiff need not show that the defendant's misconduct was the 'sole and exclusive cause' of its injury, it must show that "the defendant's act was a 'substantial' or 'significant contributing cause'" of the loss." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1242 (11th Cir. 2023) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1304 (11th Cir. 2011) and *Robbins* v. *Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir.1997)). Further, "[o]ther principles also guide us . . . . For a disclosure to be corrective, it 'need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.'" *MacPhee*, 73 F. 4th at 1244 (quoting *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013)).

[2] "To show loss causation in a § 10(b) claim, a plaintiff must offer "'proof of a causal connection between the misrepresentation and the investment's subsequent decline in value."' *Meyer*, 710 F.3d at 1195 (quoting *Robbins*, 116 F.3d at 1447).

struggles is not binary; and (2) the February 23 earnings press release contained new information. Defendants argue "the market already knew about Prospect's financial struggles." Opp. at 9. But the market did not know the *severity* of Prospect's financial problems and that those problems would require that MPT take a $283 million impairment charge. These facts were "new, that is, publicly revealed for the first time." *See Meyer*, 710 F.3d at 1198.

**B. Dismissal with prejudice was an error or mistake.**

The Court manifestly erred by (1) finding a "fact" about what "the market knew" and the *extent* of that knowledge; and (2) finding amendment was futile without considering any proposed amendment.

The Court relied on analyst reports, news articles, and other documents to piece together what the market knew. The Court's factual determination (made in favor of the *moving* party) runs counter to the market's reaction to the news on February 23, 2023. At best, the extent of what the market knew is a disputed fact and inferences should be drawn in Plaintiff's favor.

This Court should review the proposed amendment before finding futility. Defendants mischaracterize *Goldman* (Opp. at 16), where the Court *did* consider and analyze a specific proposed amendment (joinder of an identified new party). *See Goldman* v. *Brain Tunnelgenix Techs., Corp.*, 2024 WL 2976747, at *4-5 (S.D. Fla. June 13, 2024). The Court should do the same here. It is telling that even in Defendants' central case, *Meyer*, 710 F.3d 1189, the plaintiff was permitted two

amendments before being dismissed with prejudice. Here, Plaintiff was not provided this opportunity. Plaintiff filed the FAC before seeing Defendants' motion to dismiss or the Court's opinion.

## II. LEAVE TO AMEND SHOULD BE GRANTED

### A. Rule 15(a)'s liberal standard applies to this Motion.

The Motion established it was error not to grant leave to amend in light of Rule 15(a)'s liberal amendment standard. Motion at 9-12. Defendants are mistaken for several reasons when they argue that a long line of cases applying Rule 15(a) to post-judgment motions to amend are "not good law" and that a case from that long line "was expressly overruled last year." Opp. at 17 (citing *MacPhee*, 73 F.4th 1220 and *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Comm'ns, Inc.*, 376 F.3d 1065 (11th Cir. 2004)).

First, Plaintiff seeks reconsideration of how the Court applied Rule 15(a) *before* dismissing with prejudice; Rule 15(a) obviously applied then. Second, as *MacPhee* itself states, "a prior panel cannot be overturned by a later panel." 73 F.4th at 1250. *MacPhee* (a panel decision) cannot have "expressly overruled" *Spanish*. Third, *MacPhee* purported to resolve an intra-circuit split by tracing "the line of authority containing the earliest case" back to 1984 (*id.*), but the *Spanish* line of cases began with *Foman v. Davis*, 371 U.S. 178 (1962), which *MacPhee* cannot

overrule.[3] Fourth, Defendants fail to acknowledge another case from just a month prior to *MacPhee*, where the Eleventh Circuit reversed for failure to apply Rule 15(a) to a post-judgment motion. *Sheffler v. Americold Realty Tr.*, 2023 WL 3918491 (11th Cir. June 9, 2023) (applying same framework to resolve intra-circuit splits, but correctly). *MacPhee* did not expressly overrule a sixty-year line of cases, including one from a month earlier that *MacPhee* did not even reference, when panels are not allowed to overrule other panels. Finally, Defendants cherry pick a Florida case for support,[4] but other recent in-circuit cases support Plaintiff's view and cite *Sheffler*.[5] While Rule 15(a) applies here, Plaintiff also expressly filed the Motion under Rules 59(e) and 60(b) and does not dispute that the standards underlying those rules also govern; indeed, Plaintiff has met those standards. *See* Motion at 2.

**B. Plaintiff is not improperly alleging new facts.**

The SAC does not improperly allege new facts. Defendants focus their argument on the analyst reports and news articles that Plaintiff included in the SAC regarding loss causation. Opp. at 18-19. This is not surprising, given that these

[3] *Foman*, a seminal Rule 15(a) case, arose from a "District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint[.]" 371 U.S. at 182. The Supreme Court reversed and said Rule 15(a) should have applied to the post-judgment motion. *Id.*

[4] Opp. at 17-18 (citing *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 2023 WL 8258886 at *2 (S.D. Fla. Nov. 29, 2023)).

[5] *See, e.g.*, *McFalls v. NCH Healthcare Sys., Inc.*, 2024 WL 4008112, at *2 (M.D. Fla. Aug. 30, 2024) ("Post-dismissal amendments are governed by the typical Rule 15 and Rule 16 standards."); *Ravan v. Jackson*, 2023 WL 5843774, at *5 (M.D. Ga. Aug. 8, 2023).

reports are fatal to Defendants' argument that the market was already aware of the scope of Prospect's issues. These reports provide strong support at the pleading stage of what the market knew (or, more importantly, did not know) at the time of the corrective disclosure and what caused the stock price to drop.

Defendants' reliance on *Donley v. City of Morrow*, 601 F. App'x 805 (11th Cir. 2015) in challenging the analyst reports is misplaced because *Donley* addressed "newly discovered evidence" under Rule 60. *See* Opp. at 18-19. The issues here are leave to amend and futility. Plaintiff does not argue that the analyst reports are newly discovered evidence; rather, they are facts pled in response to the Court's order, clarifying the link between the corrective disclosure and the stock drop given the Court's loss causation concerns. Similarly, Plaintiff should not be faulted for supplementing the SAC with facts regarding Steward that occurred after the motion to dismiss was fully briefed. This evidence was indeed newly discovered.

**C. Amendment is not futile on loss causation.**

In response to this Court's opinion, the SAC revises and focuses the loss causation theory. The SAC also includes additional misrepresentations and explains in even greater detail how the misrepresentations and omissions contributed to artificial inflation of the stock price that was then removed when the market absorbed the February 23, 2023 corrective disclosure. SAC ¶¶229-31, 243-49.

The SAC describes in detail that the February 23, 2023 corrective disclosure caused a significant decline in MPT's stock price, which analysts and market

commentators attributed to the information disclosed regarding Prospect's financial issues and inability to pay rent. SAC ¶¶231-48. Defendants misled investors about the magnitude of these risks throughout the class period. SAC ¶¶35-84. In addition, Plaintiff added details to demonstrate that the decline in MPT's stock price was statistically significant and materially greater than fluctuations in the wider stock market. SAC ¶236.

When addressing the analyst reports, Defendants quote the Court's finding that amendment would be futile because Plaintiff "cannot plead around the fact that the market knew about Prospect's problems paying rent, and MPT's efforts to deal with Prospect's struggles to pay rent, before February 23, 2023." Opp. at 20 (quoting Order, Doc. 49 at 26). This finding is counter to the detailed facts pled in the SAC, however, because analyst reports and news articles unequivocally demonstrate that analysts and the market at large *were* surprised and unaware of the extent of the issues with Prospect, and MPT's stock price dropped as a result. SAC ¶¶234-42, 246. Further, given the stock drop following the February 23 corrective disclosure, a finding that the market already knew the truth cannot be reconciled with the efficient market theory that all information is already reflected in the market price of the security. *See MacPhee*, 73 F.4th at 1243 ("'disclosure of confirmatory information—or information already known by the market—will not cause a change in the stock price'" because "'the market has already digested that information and incorporated it into the price.'") (quoting *FindWhat*, 658 F.3d at 1310). Moreover,

whether the market knew the truth is highly fact-specific and rarely constitutes appropriate grounds for dismissal on a motion to dismiss, especially in light of the additional allegations in the SAC. *See* Motion at 7-8.

Defendants' heavy reliance on *Meyer* is misplaced. In *Meyer*, the court rejected a short seller's report as a corrective disclosure because it was "based solely on publicly available information." 710 F.3d at 1193, 1198. Here, the Prospect impairment charge, failure to pay rent, and the need to account for Prospect on a cash basis were not publicly available information. *See* SAC ¶¶11-12, 231-35. Defendants had access to much more financial information than was publicly available, including non-public accounting determinations. Also, in *Meyer*, the court stated that "disclosure of . . . information already known by the market . . . will not cause a change in the stock price." 710 F.3d at 1197. Here, the large stock drop on the corrective disclosure illustrates that the market was not aware of the full extent of Prospect's problems and the impact on MPT. *Meyer* was focused on determining what publicly available information in a short seller report was already available to the public. *Id.* at 1200. *Meyer* questioned whether the stock price could move based on information already known by the market. *Id.* at 1197-98. Here, analysts' reactions and the stock drop itself indicate that the corrective disclosure was new information that was not publicly available.

Defendants take issue with the fact that some analyst reports discussed MPT's loss of *future* rent from Prospect and did not discuss MPT's *past* fraud. Opp. at 20-

21. First, the February 23 disclosures corrected prior misrepresentations about Prospect and the financial strength of MPT's tenants. The inability to collect rent from Prospect, whether in the future or not, revealed that Defendants' prior statements and omissions were false or misleading. Second, to the extent Defendants claim that a corrective disclosure needs to reveal a past fraud, that is incorrect. Opp. at 20. A corrective disclosure need not reveal or admit past fraud. *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *20 (M.D. Ga. Mar. 23, 2018) (plaintiff need not "allege 'an express admission of fraud'" to plead loss causation).

**D. Defendants mischaracterize and ignore the additional allegations.**

The SAC adds substantial facts to bolster the falsity, scienter, and loss causation elements.[6] Defendants mischaracterize and gloss over these additions and revisions while arguing that amendment would be futile to meet the heightened pleading standards. Opp. at 22. Defendants ignore that concealment of the necessary impairment charges is just one component of the wrongdoing. *See* SAC ¶¶8, 81-84. Defendants also do not grapple with Plaintiff's allegations that Defendants repeatedly misrepresented tenants' financial weaknesses, failed to disclose the impending inability to pay rent by those tenants, and the need to switch to cash basis accounting. SAC ¶¶8, 11, 81, 100-01, 219-25. Amendment cannot be futile (meaning no complaint *could* suffice) because the SAC *does* overcome the pleading hurdles.

[6] Plaintiff provided a redlined SAC to aid review of the revised allegations. *See* Doc. 51-2.

In sum, the SAC adds facts regarding: (i) Defendants' affirmative statements on earnings calls touting its tenants' financial strength (SAC ¶¶38, 41, 44, 50, 57, 61, 64, 67, 70, 74, 77); (ii) Steward's financial weaknesses during the class period, its subsequent bankruptcy, and MPT's $1.6 billion of impairment charges[7] (SAC ¶¶14, 109-16, 149-55); (iii) financial weaknesses at two of MPT's other major tenants during the class period (SAC ¶¶158-71); (iv) what MPT should have disclosed during the class period and where those disclosures should have been made (SAC ¶¶83-84, 186); (v) analyst reports attributing the stock drop to the corrective disclosures (SAC ¶¶103-06, 237-42); (vi) market commentary indicating the corrective disclosures revealed cracks in MPT's tenant portfolio beyond just Prospect (SAC ¶¶105, 245-46); (vii) MPT's informational advantage relative to investors regarding its tenants' financial condition (SAC ¶¶120-22, 140, 156-57); (viii) additional scienter allegations and details (SAC ¶¶204, 219-25, 227-28); (ix) additional loss causation allegations and details (SAC ¶¶232-33, 236, 247-48); and (x) further details to clarify the Counts (SAC ¶¶279-84, 287-88, 291).

## CONCLUSION

Plaintiff respectfully requests that the Court grant Plaintiff's Motion for relief from the Order and leave to file the SAC.

[7] Defendants argue that the Steward facts are irrelevant because they post-date the class period. Opp. at 21. That argument is misguided because Steward's bankruptcy filings, MPT's announcement of the Steward impairments, and other evidence stated that Steward's financial troubles dated back to the class period. SAC ¶¶114, 150-53.

Dated: November 18, 2024

Respectfully submitted,

*/s/ Jonathan S. Mann*

Chris T. Hellums (ASB-5583-L73C)
Jonathan S. Mann (ASB-1083-A36M)
Austin B. Whitten (ASB-7228-K13Y)
**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
Email: chrish@pittmandutton.com
jonm@pittmandutton.com
austinw@pittmandutton.com

*Liaison Counsel for the Lead Plaintiff and Proposed Class*

Michael Dell'Angelo (*pro hac vice*)
Alex B. Heller (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bm.net
aheller@bm.net

*Lead Counsel for the Lead Plaintiff and Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will provide notification to all counsel of record.

*/s/ Jonathan S. Mann*

Chris T. Hellums (ASB-5583-L73C)
Jonathan S. Mann (ASB-1083-A36M)
Austin B. Whitten (ASB-7228-K13Y)

**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
Email: chrish@pittmandutton.com
jonm@pittmandutton.com
austinw@pittmandutton.com

*Liaison Counsel for the Lead Plaintiff and Proposed Class*